UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEANN L. LESZYNSKI,

  Petitioner,

  v.                              Case No.   16-CV-1608

PAULA STOUDT,[1]

  Respondent.

## DECISION AND ORDER

Petitioner Leann L. Leszynski filed this habeas corpus action on December 5, 2016. Judge Pepper screened the petition and concluded that there were potentially four viable claims. ECF No. 5. However, Judge Pepper determined that only two of the claims were properly exhausted by Leszynski in state court: a claim of excessive sentence in violation of the Eighth Amendment, and a *Miranda* claim. Judge Pepper gave Leszynski the option of dismissing her entire petition, staying her petition pending exhaustion of the unexhausted claims, or proceeding with the exhausted claims only. ECF No. 5. After initially attempting to exhaust all claims in state court, Leszynski dismissed her unexhausted claims and asked the court to proceed on the two exhausted claims. ECF Nos. 6, 8. Judge Pepper granted

---

[1] In February 2020, the Leszynski notified the court that she had been transferred to the Robert E. Ellsworth Correctional Center under the custody of Paula Stoudt, the superintendent of the institution. *See* ECF No. 30. Accordingly, Deanne Schaub is terminated as respondent in this action and replaced with Stoudt pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Leszynski's request. ECF No. 10. More recently, the parties consented to the jurisdiction of the undersigned magistrate judge. ECF Nos. 32, 33. For the reasons given below, the petition will be denied.

## BACKGROUND

In Washington County Circuit Court, Leszynski pled no contest to one count of neglecting a child in violation of Wis. Stat. § 948.21(1)(d), for which the trial court sentenced Leszynski to fifteen years of confinement and ten years of extended supervision. ECF No. 16-1. Leszynski was the mother of Haley Kluwe, a three-year-old girl who died as a result of a bacterial infection of Group A Streptococcal. The criminal complaint alleged that Leszynski neglected her child by refusing to seek any medical help for her daughter as the daughter noticeably and obviously deteriorated and eventually succumbed to the bacterial infection. ECF No. 24-1.

Following her daughter's death, Leszynski phoned a doctor to attempt to secure narcotics for her own personal use. After the doctor's office became suspicious when Leszynski mentioned that her daughter had recently died, the doctor's office contacted the West Bend Police Department, which dispatched a police officer to Leszynski's residence. Leszynski let the police officer into her residence and, upon seeing Haley's body, the officer requested a detective. When the detective arrived, Leszynski communicated that she wished to go somewhere more private to discuss her daughter's death. Leszynski agreed to the detective's suggestion that the two travel to the police station and use the interview rooms there. ECF No. 16-6 at 2. Although she was not handcuffed, she and her boyfriend were transported in a patrol car by a police officer.

At the station, the detective informed Leszynski that she was not in custody. Upon arriving at the station, Leszynski smoked a cigarette outside before heading to the interview rooms. The detective told Leszynski that the interview rooms had self-locking doors; however, the detective informed Leszynski that she need only knock, and an officer would unlock and open the door. After interviewing Leszynski for a little over an hour, the detective advised Leszynski of her *Miranda* rights both orally and in writing. ECF No. 16-6 at 3. Thereafter, the detective took Leszynski into custody. Before trial, Leszynski filed a motion to suppress the statements made in the interview room before the detective had apprised her of her *Miranda* rights; she also sought suppression of the statements made *after* the *Miranda* warning on the basis that those statements were improper recitations of earlier statements, in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004). The trial court rejected both arguments. ECF Nos. 16-6 at 3.

Leszynski ultimately agreed to plead no contest to the child neglect charge; in exchange for her plea, the district attorney agreed to recommend no more than ten years of confinement and ten years of extended supervision. However, at sentencing, the trial court sentenced Leszynski to the statutory maximum of fifteen years of confinement and ten years of extended supervision, and prohibited Leszynski's participation in an early-release program. ECF No. 16-14 at 62-66. Seeking post-conviction relief, Leszynski renewed both her *Miranda* arguments and also argued that the trial court improperly determined her sentence because it failed to balance the factors required by Wisconsin law. The trial court denied her motion to suppress, the Wisconsin Court of Appeals affirmed, and the Supreme Court of Wisconsin denied her petition for review. ECF Nos. 16-6, 16-9. Subsequently, Leszynski filed her petition for writ of habeas corpus here.

# ANALYSIS

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is not simply another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases in which the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A decision is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). A state-court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. As for the determination of the facts, federal courts will not "characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.' Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference. If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial

4

court's ... determination.'" *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010) (other citations omitted)).

The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1); *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id*. at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id*. at 662 (internal citation omitted).

Leszynski argues that she is entitled to relief because her sentence was excessive in violation of the Eighth Amendment to the United States Constitution and because her statements to the police before she was advised of her *Miranda* rights violated the Fifth Amendment of the United States Constitution. Her petition fails on both fronts.

1. **Eighth Amendment Challenge**

Leszynski first asserts that her fifteen-year sentence violates the Eighth Amendment's ban on cruel and unusual punishments. In response, the State argues that her claim is procedurally defaulted because she failed to present her claim to the state courts.

A. **Fair presentment**

To qualify for relief in federal court, petitioners "must fully and fairly present [their] federal claims to state courts." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (citing *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001)). This doctrine "is grounded in principles of comity, federalism, and judicial efficiency." *Anderson*, 471 F.3d at 814 (citing *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004)). Accordingly, the intention behind the doctrine is to provide "state courts a meaningful opportunity to pass upon the substance of the claims later

presented in federal court." *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). The failure to fairly present an issue to the state courts results in a procedural default of that issue. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013).

"Fair presentment . . . does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson*, 471 F.3d at 814-15 (citing *Boyko*, 259 F.34d at 788). To assess whether a petitioner has fairly presented her federal claim in state court, a federal court should consider four factors: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Anderson*, 471 F.3d at 815 (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)).

The appellate record includes nothing that would satisfy any of the four factors. With respect to the first factor, Leszynski's appellate briefs and petition for review each fail to rely on any federal authorities that involve Eighth Amendment constitutional challenges or analyses. *See* ECF Nos. 16-2, 16-5, 16-7. With respect to the second factor, the state authorities Leszynski relied upon involve sentencing discretion rather than unconstitutionally excessive punishment. *Id. See, e.g., McCleary v. State*, 182 N.W.2d 512, 517 (1971) ("The question as we view it is not whether the imposition of a nine-year-plus term was constitutionally infirm on the ground of . . . cruel and unusual punishment, but simply whether it constituted an abuse of the trial judge's sentencing discretion.")

Leszynski fares no better on the third factor. Having argued that "[s]entencing courts [must] balance three main factors: the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant," she framed the issue as a matter of judicial balancing rather than anything implicating Eighth Amendment concerns. ECF No. 16-2 at 22. Finally, Leszynski in her state briefs failed to allege any pattern of facts that was well within the mainstream of constitutional litigation; once again, the argument that the trial court failed to calculate her sentence properly is founded in discretionary concerns rather than any limit imposed by the Eighth Amendment. Not surprisingly, the state appellate court followed Leszynski's lead and analyzed whether the trial court abused its sentencing discretion. There is no mention of the Eighth Amendment at all.

In *Anderson*, the court concluded that the petitioner failed to fairly present his due process claims in state court because the petitioner "relied solely upon Wisconsin law requiring the application of pre-sentence credits . . . [and] [a]t no time did he assert that the manner in which his sentence credits were applied gave rise to a federal due process violation." *Anderson*, 471 F.3d at 815. Likewise, Leszynski relied solely on Wisconsin law in arguing that the trial court improperly determined her sentence. Therefore, I conclude that Leszynski failed to fairly present the Eighth Amendment claim to the state courts, which means it is procedurally defaulted.

Even though Leszynski failed to fairly present her claim in state court, this court may consider her Eighth Amendment claim if she demonstrates cause for her default and prejudice resulting therefrom, or that a miscarriage of justice will result if this court does not consider the merits of her case. *See Anderson*, 471 F.3d 811, 815 (7th Cir. 2006) (citing *Perruquet*, 390 F.3d at 516). Cause "ordinarily requires demonstrating an external obstacle preventing the

7

petitioner from fairly presenting the claim in state court." *Id.* Prejudice requires that the petitioner show "actual prejudice, not merely a possibility of prejudice." *Id.* Finally, "[t]he miscarriage-of-justice-exception applies when the petitioner can demonstrate that he is actually innocent." *Id.*

Here, Leszynski appears to argue that the absence of counsel was the cause for her failure to fairly present the Eighth Amendment claim to a state court: she states that she "didn't have an attorney to raise this claim in the state courts." ECF No. 29 at 3. However, a petitioner's *pro se* status in state court does not excuse a procedural default. *See Haley v. United States*, 78 F.3d 282, 285 (7th Cir. 1996). Moreover, a cursory review of the record confirms that Leszynski *did* have counsel representing her at trial and on appeal. ECF Nos. 16-2, 16-14. Even if I construed her argument as an assertion that counsel was ineffective for failing to raise the Eighth Amendment issue, that argument is itself defaulted because Leszynski did not raise it with the state courts. As the Supreme Court has recognized, "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

It appears doubtful that Leszynski is arguing actual innocence as a reason to excuse her procedural default. *See* ECF No. 29 (arguing generally that she is not a medical professional and did not intentionally allow her daughter to die). Even if she were, however, "such a claim requires petitioner to support [her] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v Delo*, 513 U.S. 298, 324 (1995). Here, Leszynski is merely re-arguing her defense; there is nothing at all novel in her

8

filings. For these reasons, I conclude that Leszynski has procedurally defaulted her Eighth Amendment challenge.

### B. Excessive Sentencing

For the sake of completeness, I will briefly address the merits of Leszynski's Eighth Amendment challenge. The Eighth Amendment's ban on cruel and unusual punishments "'prohibits imposition of a sentence that is grossly disproportionate to the severity of a crime.'" *Ewing v. California*, 538 U.S. 11, 22 (2003) (quoting *Solem v. Helm*, 463 U.S. 277, 281 (1983)). However, outside capital offenses, "successful challenges to the proportionality of particular sentences have been exceedingly rare." *Ewing*, 538 U.S. at 21 (citing *Solem*, 463 U.S. at 289). "Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem*, 463 U.S. at 290; *see also Ewing*, 538 U.S. at 22 (affirming "that federal courts should be reluctant to review legislatively mandated terms of imprisonment"); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (affirming that states are "entitled to make [their] own judgments" regarding length of sentence subject to the extreme confines of the Eighth Amendment).

Given that states are entitled to make their own judgments subject only to the extreme strictures of the Eighth Amendment, I cannot agree that a fifteen-year term of imprisonment is grossly disproportionate to the offense at issue here. Indeed, "[a]s a general rule, a federal court will not review state sentencing determinations that fall within statutory limits." *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir. 1984) (citing *Solem*, 463 U.S. 277 and *Rummel*, 445 U.S. 263). Here, a small child died due to Leszynski's conduct. The sentencing judge concluded that this was a "very grave" case, that the child suffered, and that Leszynski

9

knew her child was declining and not getting better. ECF No. 16-6 at 5. Fifteen years of confinement is neither cruel nor unusual.

## 2. Fifth Amendment Challenge

Next, Leszynski argues that the statements she made prior to receiving the *Miranda* warning were obtained in violation of the Fifth Amendment, which protects the accused against self-incrimination.[2] Under the well-known rule of *Miranda,* "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless" it demonstrates that the accused was given her *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Recognizing that "custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely . . . *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran v. Burbine*, 475 U.S. 412, 420 (1986).

The question is whether the statements at issue were made during a "custodial" interrogation. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. However, to determine whether a person is in custody, "the only relevant inquiry is how a reasonable man in the suspect's position

---

[2] It is unclear whether Leszynski maintains her argument that her post-*Miranda* statements should be suppressed. However, Leszynski fails to develop the argument in her briefing and "[t]he failure to develop and support arguments . . . is sufficient grounds to deny the habeas." *Halligan v. Burke*, Case No. 17-C-3757, 2018 WL 840768, at *5 (N.D. Ill. Feb. 12, 2018) (citing *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)). Further, her claim that *Missouri v. Seibert* demands that her post-*Miranda* statements must be suppressed requires that this Court first suppress her pre-*Miranda* statements. *See United States v. Johnson*, 680 F.3d 966, 979 (7th Cir. 2012), *overruled on unrelated grounds by Fowler v. Butts*, 829 F.3d 788, 791 (7th Cir. 2016). Thus, because her claim seeking to suppress her pre-*Miranda* statements is without merit, Leszynski's argument that her post-*Miranda* statements should be suppressed is moot.

10

would have understood his situation." *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004) (citing *Berkemer v. McCarty*, 468 U.S. 420, 422 (1984)).

Here, the Wisconsin Court of Appeals applied this standard.[3] The court first noted that Leszynski had volunteered statements to the police at her apartment and, eventually, she told the detective that she wanted to speak privately. When the detective suggested they talk at the police station, she and her boyfriend agreed. The court found that her request for privacy was what gave rise to the trip to the police station rather than any suggestion that she was under arrest. Moreover, the police told both individuals that they were *not* under arrest. No handcuffs were involved, and no questioning occurred during the trip to the station in the squad car. The fact that the interview room doors locked automatically was mitigated by the fact that officers told her simply to knock on the door if she needed anything. The court of appeals was perfectly reasonable in concluding that the initial discussion was not custodial.

The *Yarborough* case is particularly instructive, both for its discussion of custody as well as the application of AEDPA standards to such determinations. 541 U.S. 652. There, after a detective left word that she wished to speak with Alvarado, Alvarado voluntarily ventured to the police station to be interviewed. Like here, the detective brought Alvarado to an internal interview room in the station. *Id.* at 656. The detective allowed Alvarado, who was not yet eighteen years old, to take breaks during the interview, which lasted some two hours. His parents were not allowed to participate in the interview. Putting AEDPA's deference aside, the Supreme Court found custody to be a close question: "fairminded jurists could disagree over whether Alvarado was in custody." *Id.* at 664. Because it was a close question, however,

---

[3]The court incorporated the *Miranda* analysis of a companion case, *State v. Streicher,* which was the appeal brought by Leszynski's boyfriend, who had been charged as party to a crime. 866 N.W.2d 404, 2015 WL 2078121 (Wis. Ct. App. May 6, 2015)

11

Case 2:16-cv-01608-SCD    Filed 06/11/20    Page 11 of 13    Document 36

it would be impossible to describe the state courts' determination that he was *not* in custody as objectively unreasonable, which is what AEDPA requires. *Id.* at 664-65. Indeed, the *Yarborough* court criticized the Ninth Circuit for reaching the opposite result, remarking that "the Court of Appeals was nowhere close to the mark." *Id.* at 666.

*Yarborough* controls the result here. Leszynski volunteered to accompany the detective to the station—in fact, speaking privately was her idea. Before she was given her *Miranda* warning, the interview lasted approximately one hour. While Leszynski was placed in an automatically-locking interview room, she was nevertheless informed both that she was *not* under arrest and that the door would be opened if she knocked. ECF No. 16-6 at 3. Under these facts, it would be impossible to conclude that the Wisconsin Court of Appeals unreasonably applied clearly established law in concluding that the interview was non-custodial.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

For a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). If a petition is denied on procedural grounds (as with Leszynski's Eighth Amendment claim), a certificate of appealability should issue if "jurists of reason" would find it debatable both that a petitioner states a valid claim of the denial of a constitutional right and that the district court

12

Case 2:16-cv-01608-SCD   Filed 06/11/20   Page 12 of 13   Document 36

was correct in its procedural ruling. *Slack*, 529 U.S. at 478. Here, I cannot conclude that the outcome is debatable by reasonable jurists. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. A certificate of appealability is **DENIED**. The clerk will enter judgment accordingly.

**SO ORDERED** this 11th of June, 2020.

*Stephen C. Dries*
_____
STEPHEN C. DRIES
United States Magistrate Judge